CARL LEE GLASS, )
        Petitioner, )
v. )    Nos. 2:12-CR-47
)         2:14-CV-277
UNITED STATES OF AMERICA, )
        Respondent. )

## MEMORANDUM AND ORDER

Carl Lee Glass ("petitioner") has filed a motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255, [Doc. 103].[1] He also has filed a motion to supplement the § 2255 motion, [Doc. 118]. For the reasons discussed in this memorandum and order, both motions are DENIED.

### I.      Background

Petitioner initially was charged in a criminal complaint with conspiring to distribute and to possess with the intent to distribute crack cocaine and with being a convicted felon in possession of a firearm.[2] Attorney Tim Moore of Federal Defender Services of East Tennessee was appointed to represent him.[3] An indictment ultimately was filed which charged petitioner with conspiring to distribute cocaine, *i.e.*, powder cocaine (Count One); distributing cocaine on five separate dates (Counts Two-Six); being a convicted felon in possession of a firearm (Count Seven); and possessing a firearm in furtherance of the drug trafficking offenses described in Counts One, Five and Six (Count Eight).[4]

Due to a belatedly-discovered conflict of interest, Federal Defender Services, *i.e.*, attorney

---

[1]  Document references are to the docket in No. 2:12-CR-47.

[2] Doc. 1.

[3] Doc. 4.

[4] Doc. 9.

Moore, was allowed to withdraw, and Criminal Justice Act Panel attorney Jordan Pennington was appointed to represent petitioner.[5]

On August 6, 2012, petitioner and the United States entered into a plea agreement in which petitioner pled guilty to Counts One and Eight, *viz.*, conspiring to distribute cocaine and possessing a firearm in furtherance of that offense.[6] The plea agreement correctly recited that the punishment upon conviction of Count One, the conspiracy count, was a maximum of 20 years under 21 U.S.C. § 841(a)(1) and (b)(1)(C), and that the punishment on Count Eight, the firearm count, was a minimum mandatory five years to a maximum of life which was required by 21 U.S.C. § 924(c)(1)(A) to run consecutively to the sentence imposed for Count One.

In paragraph 4 of the plea agreement, petitioner stipulated that he distributed at least 400 grams, but less than 500 grams, of cocaine. Petitioner also waived his right to directly appeal his conviction and sentence, with the exception of a sentence imposed which exceeded the greater of his guideline range or applicable minimum mandatory sentence. He also waived his right to collaterally attack his conviction or sentence under 28 U.S.C. § 2255 with the exception of any claim of ineffective assistance of counsel or prosecutorial misconduct unknown to him at the time the judgment was filed.[7]

The presentence report ("PSR") prepared by the United States Probation Office reflected that petitioner's base offense level for a conviction under Count One was 24 under § 2D1.1 of the 2012 version of the United States Sentencing Guidelines ("USSG"), based on his stipulation that he distributed between 400 and 499 grams of cocaine.[8] Three levels were deducted for his acceptance of responsibility and assistance to law enforcement, resulting in an adjusted base

---

[5] Doc. 24.
[6] Plea Agreement, Doc. 36 ¶ 1.
[7] Plea Agreement, Doc. 36, ¶ 10.
[8] PSR, ¶ 39.

offense level of 21.[9]  The base offense level for a conviction under Court Eight, the firearm count, was the statutorily required minimum mandatory and consecutive sentence of 21 U.S.C. § 924(c).[10]

Petitioner's prior criminal convictions generated a criminal history score of 4.[11]  Because he was under a sentence of probation imposed by a Georgia court for a felony conviction when he committed the offenses to which he pled guilty in this court, two points were added to his criminal history score.[12]  The resulting criminal history score of 6 generated a criminal history category of III under chapter five, part A of USSG.[13]

Based on his offense level of 21 and criminal history category of III, petitioner's guideline range for his conviction under Count One was 46 to 57 months.[14]  An additional five years was required to be added to that sentence for his conviction under Count Eight.[15]

The change of plea hearing was held on August 15, 2012.[16]  Prior to the sentencing hearing, attorney Pennington moved to withdraw based upon petitioner's accusations that Mr. Pennington was providing ineffective assistance.[17]  The Court granted the motion, appointing panel attorney Thomas Scott to assume representation of petitioner.[18]

The sentencing hearing, at which petitioner was represented by attorney Scott, was held on May 20, 2013.[19]  After that hearing, the Court sentenced petitioner to 46 months imprisonment on

---

[9] PSR, ¶ 40-48.
[10] PSR, ¶ 49,
[11] PSR, ¶¶ 53-67.
[12] PSR, ¶ 69.
[13] PSR, ¶ 70.
[14] PSR, ¶ 97.
[15] PSR, ¶ 97.
[16] Doc. 41.
[17] Doc. 71.
[18] Doc. 74.
[19] Doc. 82.

Count One, the bottom of his guideline range, and an additional 60 months for his conviction under Count Eight.[20]

Notwithstanding the waiver of his right to appeal his conviction or sentence, petitioner filed a *pro se* appeal to the Sixth Circuit Court of Appeals.[21] That court appointed attorney Thomas Schad to represent petitioner on his appeal.[22] Attorney Schad filed an *Anders* brief, asserting that there were no meritorious grounds for the appeal. After reviewing the record, the court of appeals agreed with attorney Schad that there were no legitimate issues for an appeal. Based on that conclusion as well as petitioner's waiver of his right to pursue a direct appeal, the court of appeals dismissed the appeal.[23]

## II.     Standard of Review For § 2255 motions

This Court must vacate and set aside petitioner's sentence if it finds that "the judgment was rendered without jurisdiction, or that the sentence imposed was not authorized by law or otherwise open to collateral attack, or that there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack, . . ." 28 U.S.C. § 2255.    Under Rule 4 of the Governing Rules, the Court is to consider initially whether the face of the motion itself, together with the annexed exhibits and prior proceedings in the case, reveal the movant is not entitled to relief.  If it plainly appears the movant is not entitled to relief, the court may summarily dismiss the § 2255 motion under Rule 4. An evidentiary hearing is not necessary when the petitioner's claims "cannot be accepted as true because they are contradicted by the record, inherently incredible, or [are] conclusions rather than statements of fact, *Arredondo v. United States*, 178 F.3d. 778, 782 (6th Cir. 1999).

---

[20] Judgment, Doc. 83.

[21] Doc. 89.

[22] Doc. 94.

[23] Doc. 98.

When a defendant files a § 2255 motion, he must set forth facts which entitle him to relief. *Green v. Wingo,* 454 F.2d 52, 53 (6th Cir. 1972); *O'Malley v. United States*, 285 F.2d 733, 735 (6th Cir. 1961). "Conclusions, not substantiated by allegations of fact with some probability of verity, are not sufficient to warrant a hearing." *O'Malley*, 285 F.2d at 735 (citations omitted). A motion that merely states general conclusions of law without substantiating allegations with facts is without legal merit. *Loum v. Underwood*, 262 F.2d 866, 867 (6th Cir. 1959); *United States v. Johnson*, 940 F. Supp. 167, 171 (W.D. Tenn. 1996).

To warrant relief under 28 U.S.C. § 2255 because of constitutional error, the error must be one of constitutional magnitude which had a substantial and injurious effect or influence on the proceedings. *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993) (citation omitted) (§ 2254 case); *Clemmons v. Sowders*, 34 F. 3d 352, 354 (6th Cir. 1994). See also *United States v. Cappas*, 29 F.3d 1187, 1193 (7th Cir. 1994) (applying *Brecht* to a § 2255 motion). If the sentencing court lacked jurisdiction, then the conviction is void and must be set aside. *Williams v. United States*, 582 F. 2d 1039, 1041 (6th Cir.), cert. denied, 439 U.S. 988 (1978). To warrant relief for a non-constitutional error, petitioner must show a fundamental defect in the proceeding that resulted in a complete miscarriage of justice or an egregious error inconsistent with the rudimentary demands of fair procedure. *Reed v. Farley*, 512 U.S. 339, 354 (1994); *Grant v. United States,* 72 F. 3d 503, 506 (6th Cir.), cert. denied, 517 U.S. 1200 (1996).

In order to obtain collateral relief under § 2255, a petitioner must clear a significantly higher hurdle than would exist on direct appeal. *United States v. Frady*, 456 U.S. 152 (1982). When a § 2255 Petitioner claims he was denied his sixth amendment right to effective assistance of counsel, it is noted that an attorney is presumed to have provided effective assistance, and the Petitioner bears the burden of showing that the attorney did not, *Mason v. Mitchell*, 320 F.3d 604,

616-17 (6th Cir. 2003). Petitioner must prove that specific acts or omissions by his attorney were deficient and that the attorney failed to provide "reasonably effective assistance," *Strickland v. Washington*, 466 U.S. 668, 687 (1987), which is measured by "prevailing professional norms," *Rompilla v. Beard*, 545 U.S. 374, 380 (2005). If Petitioner crosses this evidentiary hurdle, he must then show "a reasonable probability that, but for [the attorney's acts or omissions], the result of the proceedings would have been different." *Strickland*, 466 U.S. at 694. In other words, he must show that he was prejudiced by the attorney's deficient representation:

> To succeed on an ineffective assistance claim, a defendant must show that counsel's deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). [A court's] review of counsel's performance is "highly deferential." *Id.* at 689, 104 S.Ct. 2052. [The court must] "judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Id.* at 690, 104 S.Ct. 2052. The defendant "must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." Id. To establish "prejudice," a "defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694, 104 S.Ct. 2052. "The likelihood of a different result must be substantial, not just conceivable." *Harrington v. Richter*, 562 U.S. 86, 131 S.Ct. 770, 792, 178 L.Ed.2d 624 (2011). And, "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice ... that course should be followed." Strickland, 466 U.S. at 697, 104 S.Ct. 2052.

*Docherty v. United States, 536 Fed. Appx. 547, 551 (6th. Cir. 2013).*

## III. Petitioner's Motions

### A. The Original Motion, Doc. 103.

Petitioner claims that all four of his attorneys were ineffective in varying ways.

*As to attorney Tim Moore of Federal Defender Services*:

Petitioner claims that Mr. Moore was ineffective for waiving a preliminary hearing.[24] Nowhere in petitioner's motion or accompanying memorandum[25] does petitioner further elaborate on this claim. He merely states that attorney Moore was ineffective for waiving a preliminary hearing, which Mr. Moore in fact did.[26]

Firstly, petitioner's unsupported claim is conclusory and forces the Court to speculate as to any prejudice petitioner may have suffered. Secondly, and in that same vein, if a grand jury returns an indictment prior to the time a preliminary hearing is held, there is no longer a right to that preliminary hearing, *United States v. Woods*, 544 F.2d 242, 249 (6th Cir. 1976). The grand jury returned its indictment against petitioner on June 13, 2012, nine days after petitioner's arrest and initial appearance. Under Rule 5.1(c) of the Federal Rules of Criminal Procedure, a preliminary hearing would have been timely if held within 14 days of petitioner's initial appearance. By virtue of the return of the indictment well within that 14 day window, petitioner's right to a preliminary hearing evaporated and he suffered no prejudice because that hearing was waived.

Thirdly, even if it is assumed that attorney Moore should have asked for a preliminary hearing; and if it also is assumed that the magistrate judge would have set the hearing on the particular date requested (by no means a certainty); and if it be assumed that the grand jury did not return its indictment before the date set by the magistrate judge for the preliminary hearing, the only thing petitioner would have lost by the lack of that preliminary hearing was *de facto* discovery, and there is no constitutional right to discovery in a federal criminal case. The only discovery to which a defendant is entitled in federal court is that listed in Federal Rule of

---

[24] Doc. 103, at 6.

[25] Doc. 103-1.

[26] Doc. 7.

Criminal Procedure 16, the *Brady* rule, and the Jencks Act, *United States v. Presser*, 844 F.2d 1275, 1285, n. 12 (6th Cir. 1988).[27] Again, there could have been no prejudice resulting from attorney Moore's waiver of a preliminary hearing.[28]

### As to attorneys Pennington and Scott:

Petitioner claims that Pennington failed to investigate petitioner's claims; failed to file objections to the PSR; failed to put in writing the agreement between the government and petitioner; failed to interview potential witnesses; failed to file pretrial motions; accepted the government's version of the facts set out in the plea agreement as opposed to petitioner's version; failed to advise petitioner of the guideline range until after he had signed the plea agreement; induced petitioner to enter a plea of guilty; and forced petitioner to state to this court that he agreed with the plea agreement when in fact he did not.

Petitioner claims that attorney Scott failed to investigate petitioner's clams; induced him to plead guilty; failed to object to the PSR; and failed to investigate evidence which would have shown that petitioner was innocent.

**(a).** Petitioner first asserts that Pennington failed to investigate the case. This is a conclusory claim, and petitioner does not refer to any fact to support it. Assuming Pennington performed no independent investigation, what would that investigation have revealed that would have been of any benefit to petitioner? No one is in a better position than petitioner to supply the answer to this question, and he fails to do so. Moreover, during his change of plea hearing, he

---

[27] And neither is there a constitutional right to a preliminary hearing; *see, U.S. v. Mulligan,* 520 F.2d. 1327 , 1329-30 (6th Cir. 1975)

[28] The court has not overlooked that the complaint charged petitioner with conspiring to distribute crack cocaine, not cocaine. Based on the subsequent indictment, it is assumed that a preliminary hearing would have shown that there was no probable cause to believe that he conspired to distribute crack, and count one of the complaint would have been dismissed. But there would have been a wealth of probable cause to believe that he was a convicted felon in possession of a firearm, and the complaint would not have been dismissed in its entirety. Additionally, it is likely that the government would have filed a new complaint or moved to amend the existing complaint. Whatever the scenario, petitioner suffered no prejudice.

told this court, under oath, that he had discussed the case with his lawyer, and that he had told him everything he knew about it. [29]

**(b).** Petitioner next claims that Pennington should have, but did not, file pretrial motions. The only motion which petitioner discusses is (presumably) a motion to suppress evidence seized from his residence pursuant to his consent to search the residence and a vehicle. He states that his consent was coerced because "the authorities had done entered and searched his residence and vehicle." [30]

As the documents attached to petitioner's motion reveal, the officers entered petitioner's residence to (1) retrieve his dogs, and (2) retrieve his children and clothing for the children, since petitioner's wife also had been arrested.[31] Even if it be assumed that protection of the animals and the children after petitioner and his wife had been taken into custody did not constitute exigent circumstances justifying a warrantless entry for the limited purposes just described, nothing in this record, including petitioner's motions and accompanying documents, indicate that the officers saw, much less seized, any incriminating evidence while in the house, or that they subsequently told petitioner that he should go ahead and consent to the search because they had already seen damning evidence. In other words, petitioner's claim that his consent was coerced due to the officers' brief entry to secure the children and dogs has no factual support , and is a mere conclusory allegation.

With regard to the search of the car, in paragraph 4 of the plea agreement petitioner states that he consented to its search during the traffic stop, not some time later as he now claims. Further, he does not say what if anything was found in the vehicle. Based on the recitations in the

---

[29] Tr., Doc. 92, at 4

[30] Doc. 103-1, at 52.

[31] Doc. 103-3, at 3.

plea agreement, it would seem that nothing was found. [32]  The $1835 in currency was found on

his person, and a search of an arrestee's person incident to his arrest requires no warrant, *Chimel*

*v. California*, 395 U.S. 752, 762-63 (1969).

Petitioner's claim that he consented to the search of his home and vehicle only because he

was coerced is conclusory and has no indicia of factual support.  In fact, it is directly contradicted

by the records in this case.  Beyond what is discussed above, petitioner does not say or even

suggest what other motions should have been filed.  There is no basis to suspect, much less find,

that either Pennington or Scott rendered ineffective assistance for failing to file pretrial motions.

**(c).**  Petitioner claims that both attorney Pennington and attorney Scott should have filed

objections to the PSR.  Specifically, he argues that they should have objected to the amount of

cocaine attributed to him, 400 to 499 grams.  He insists that he distributed 30 grams of cocaine, at

the most.

First, although the attorneys filed no objections, petitioner himself objected at his

sentencing hearing to the amount of cocaine attributed to him in the PSR, and as discussed

hereafter the court dealt with his objection. [33] Therefore, even if the attorneys should be faulted

for filing no objection, petitioner sustained no prejudice since the court considered his *pro se*

objection.

In any event, neither attorney can be criticized for failing to file an objection to the drug

amount.  Petitioner stipulated in the plea agreement that he distributed at least 400 grams, but less

than 500 grams, of cocaine.  To be sure, he sporadically maintained that he was responsible for far

---

[32] A drug-sniffing dog alerted on the car, but allowing a drug-detection dog to sniff around a vehicle requires no
warrant, *U.S. v. Perez*, 440 F.3d. 363, 375 (6th. Cir. 2006).  And to repeat, neither the plea agreement nor petitioner's
motion indicates that any contraband was found in the vehicle.

[33] Tr., Doc. 93, at 6.

less than 400 grams, and he did so at his sentencing hearing. [34] The problem with his insistence that he distributed much less than 400 grams is that it is unequivocally contradicted by his stipulation in paragraph 4 of the plea agreement and his sworn testimony at his change of plea hearing. At that hearing he testified that he understood he was under oath;[35] that he had discussed his case with his lawyer and told him everything he knew about his case;[36] that he believed that his lawyer was aware of all the facts;[37] that he had read the plea agreement;[38] that he had discussed with his lawyer all possible defenses he might have to the charges;[39] that he was under no pressure;[40] that he had read paragraph 4 of the plea agreement;[41] *and that the facts set out in that paragraph were true.*[42] He now denies that he ever admitted to anyone that he distributed any quantity of cocaine beyond 30 grams, from which it inexorably follows that he either committed perjury during his change of plea hearing or during his sentencing hearing. "Solemn declarations in open court carry a strong presumption of verity," *Blackledge v. Allison*, 471 U.S. 63, 74 (1977). Allowing a petitioner to so cavalierly recant his stipulations in a plea agreement and his subsequent sworn testimony would effectively render plea colloquies a meaningless exercise and essentially put an end to plea agreements. Further, even if petitioner felt compelled by his lawyer(s) to falsely admit to the drug amount, he had ample opportunity during the sentencing hearing to disavow the plea agreement and go to trial.[43] Petitioner eschewed that offer

---

[34] *Id.*, at 3.
[35] Tr., doc.92, at 3.
[36] *Id.*, at 4.
[37] *Id.*, at 4-5.
[38] *Id.*, at 9.
[39] *Id.*, at 8-9.
[40] *Id.*, at 12-13.
[41] *Id.*, at 14.
[42] *Id.*, at 14-15.
[43] Tr., Doc. 93, at 5.

and said that he wished to "take the plea." [44]  When the court asked if he wanted to change the answers he gave at his change of plea hearing; petitioner answered, "No," and stated that he wanted to proceed with the sentencing hearing. [45]

Petitioner cannot be allowed to impeach his own testimony as he now seeks to do. His lawyers were not ineffective for failing to object to the amount of cocaine petitioner testified that he in fact distributed; had they done so, it not only would have been a spurious objection, it would have put them in the untenable position of effectively stating to the court that their client had committed perjury.

**(d)**.  Petitioner claims that Pennington failed to insure that an agreement between petitioner and the government was put in writing.  Petitioner apparently makes two distinct claims under this single umbrella: first, that Pennington improperly allowed him to sign a plea agreement in which he (falsely) stipulated that he distributed more than 400 grams of cocaine, and; second, that attorney Scott allowed the government to breach its obligations under the plea agreement.

To state the obvious, the plea agreement was in writing, and nothing else need be said. It also should be noted that petitioner testified at the change of plea hearing that the government had made no promises or representations to him apart from those specifically set out in the plea agreement. [46]  The only support for petitioner's claim that his lawyer "allowed" him to sign a plea agreement which contained a false stipulation regarding the amount of cocaine he distributed is his unsupported *ipse dixit* which has already been extensively discussed.

Regarding his claim that the government breached its obligations under the agreement and that his lawyer was ineffective for failing to object, he argues that AUSA Bowman declined to

---

[44] *Id.*

[45] *Id.*, at 5-6.

[46] Tr. Doc. 92, at 13.

agree that petitioner provided substantial assistance and to move for a downward departure. The plea agreement, however, did not obligate the government to ask for a downward departure for substantial assistance, and as noted above, petitioner acknowledged that no promises had been made to him beyond those contained in the plea agreement. Attorney Scott was not ineffective for objecting to the government's failure to do that which it was not required to do.

**(e).** Petitioner faults Pennington for accepting the government's version of the facts, and "not his own or defendant's." The court is unsure what to make of petitioner's argument that Pennington should have insisted that his, *i.e.*, Pennington's, version of the facts be employed in the plea agreement. Regardless, that assertion is subsumed by his argument that Pennington should have insisted that petitioner's version be used. That, of course, is tantamount to saying that there should have been no plea agreement at all since a defendant cannot dictate to the government the terms or factual recitations in a plea agreement. A plea agreement, as its name connotes, requires the agreement of both parties. A defendant has no constitutional right to a plea agreement at all, much less one which has terms suitable only to him, *Weatherford v. Bursey*, 429 U.S. 545, 561 (1977). The fact remains that petitioner testified under oath before this court that the facts in the plea agreement were true. Pennington was not ineffective for accepting a version of the facts which petitioner himself swore was true.

**(f)**. Petitioner claims that Pennington failed to inform him of the guideline range until sometime after the plea agreement had been signed.

Before the plea agreement was signed, and even for some time thereafter, the best Pennington or any other lawyer could do was provide petitioner with an estimate of his guideline range. After advising petitioner of the maximum statutory punishments he faced, the court explicitly told petitioner during the change of plea hearing that the guideline range would be

determined after the probation Office prepared a presentence report. [47] Failing to impart to petitioner information which did not yet exist did not constitute ineffective assistance.

**(g).** Petitioner claims that Pennington induced him to plead guilty; told him to agree to the quantity of cocaine stipulated in the plea agreement; and instructed him to answer "yes," (presumably to the court's questions concerning the stipulated facts).

These claims are but a variation of petitioner's recurring theme that he never agreed that he distributed at least 400 grams of cocaine, an assertion which is in diametric opposition to his signed plea agreement and his sworn testimony that the facts set out in that plea agreement were true. For this court to find Pennington did what petitioner claims, the court necessarily would have to conclude that petitioner committed perjury during the change of plea hearing and then countenance that perjury. Petitioner's allegations have no factual support in the record.

### As to attorney Scott:

Petitioner levels many of the same accusations against attorney Scott as he does against Pennington, *viz.,* that Scott failed to investigate petitioner's claims; induced him to plead guilty; failed to object to the PSR; and failed to investigate evidence which showed that petitioner was innocent. Everything that was said about these allegations against Pennington apply with equal force to petitioner's allegations against Scott, and there is no need to repeat what already has been said, other than to reiterate that the claims are without merit.

Petitioner also claims that he instructed Scott to file a motion that petitioner be allowed to withdraw his guilty plea and that Scott ignored that instruction. [48] This allegation is starkly contradicted by the record.

First, Scott wrote a lengthy letter to petitioner dated May 14, 2013 (and apparently hand-

---

[47] Tr., Doc. 92, at 15-17, 20.
[48] Petitioner's affidavit, Doc. 103-2, at 9

delivered it that day) in which he undertakes to explain to petitioner the risk he would be running if the plea was withdrawn and he went to trial. Scott ended the letter by asking petitioner to consider the letter carefully and that he would call later to confirm that petitioner still wished to withdraw his plea.[49]

Second, the sentencing hearing took place on May 20, six days after Scott delivered this letter to petitioner. As already discussed, petitioner explicitly told this court that he wanted to go forward with the sentencing hearing.[50] That statement to the court on May 20 cannot be reconciled with his current assertion that he confirmed his instruction to Scott to file a motion to withdraw his guilty plea.

### *As to attorney Schad:*

Mr. Schad was appointed by the Court of Appeals to represent petitioner on his direct appeal. Petitioner faults Schad for filing an *Anders* brief and for failing to argue before the Court of Appeals that there was no evidence to support the government's contention that he distributed more than 400 grams of cocaine.[51] To support his claim that Schad provided ineffective assistance by failing to raise that issue, petitioner refers to another case, *Arredondo v. United States*, 178 F 3d. 778 (6th. Cir. 1999) in which Mr. Schad successfully argued that an attorney was ineffective for failing to challenge the amount of drugs.[52]

The problem with petitioner's reliance on *Arredondo* is that the defendant in that case, unlike petitioner herein, never testified under oath that he distributed a certain quantity of drugs. Here, petitioner himself stipulated in the plea agreement that he distributed at least 400 grams of cocaine, and thereafter swore to this court that his stipulation was true. Additionally, petitioner

---

[49] Doc. 103-10.

[50] Doc. 93, at 5.

[51] Doc. 103-1, at 35.

[52] *Id.*

had waived his right to directly appeal his conviction and sentence with two exceptions that never became relevant.  Attorney Schad was not ineffective for failing to make a futile and frivolous argument.

***Petitioner's claims that the district judge was biased, and that this case should be referred to another judge:***

Petitioner says that this district judge manifested bias against him because he called petitioner a liar, and that this judge coerced petitioner into accepting the plea agreement. [53]

Perhaps it is putting too fine a point on the matter, but this court never called petitioner a liar.  To be sure, the court definitely asked petitioner at the sentencing hearing why he earlier lied at the change of plea hearing.  That was a fair question in view of the fact that petitioner previously had testified under oath that his stipulation in the plea agreement regarding the quantity was accurate.  His statements at the sentencing hearing were in unequivocal contradiction of his testimony at the change of plea hearing.  His testimony at his sentencing hearing was, in practical effect, " I committed perjury during my change of plea hearing; believe what I say now, not what I said earlier."  That this court was exasperated by petitioner's perjury there can be no doubt, but exasperation cannot be equated with judicial bias,  *United States v. Powers*, 500 F.3d. 500, 514 ( 6th. Cir. 2007), (citing *Liteky v. United States*, 510 U.S. 540 (1994))].

Petitioner's argument that he "felt intimidated" and that the district judge "intended" to coerce petitioner into going forward with his guilty plea is unbelievable, not to mention conclusory without any factual basis. As already discussed, the court gave petitioner an opportunity to go to trial if that is what he wished. No threats were made about the possible outcome of a trial.

As for petitioner's argument that this court accepted as true the stated amount of

---

[53] Doc. 103-1, at 10 *et. seq.*

cocaine—at least 400 grams—without conducting an evidentiary hearing is correct. There was no need to conduct a hearing when petitioner himself testified under oath that he distributed at least that amount at the change of plea hearing and then declined the court's offer at the sentencing hearing to go to trial.

No reasonable person would question this district judge's impartiality, 28 U.S.C. §455. It follows there was not then, nor is there now, any basis to require that this case be referred to another district judge. Petitioner's claims premised on the district judge's alleged bias have no merit.

## B.    Petitioner's Motion To Amend His Petition, Doc. 118

Petitioner's motion to amend has not been granted. Nevertheless, the court will address it on its merits.

Most of the motion is a re-argument of matters raised in his original motion, accompanying brief, and affidavit. He does raise, however, one additional point: he claims that he initially was charged by the grand jury with distributing crack cocaine, not cocaine, which proves that the government engaged in illegal conduct and violated his Due Process rights. He argues that only a grand jury has the authority to change the charges lodged against a defendant, and in his case the government unilaterally altered the charges, thus showing that his attorneys were ineffective for failing to present this issue to the court.

Petitioner is extremely careless with the facts. He was at first charged in a criminal complaint with conspiring to distribute crack. It was the grand jury which indicted him for conspiring to distribute powder cocaine, and it was the charges in that indictment for which petitioner would have been tried had he not first pled guilty. Obviously the charges in the criminal complaint were different, but neither was that of any constitutional significance. The

complaint essentially disappeared upon the filing of the indictment. No one raised an issue regarding the crack cocaine charges in the complaint and, had they done so, nothing would have happened beyond the court and petitioner hearing an explanation. Most assuredly the indictment could not have been dismissed. Petitioner's attorneys were not ineffective for failing to file a motion that would have not accomplished anything more than wasting time.

Petitioner's motion to amend is re-argument of his original motion, or conclusory, or both. It has no legal or factual basis, and therefore is denied.

## IV.    Conclusion

None of petitioner's claims warrant an evidentiary hearing; they are meritless and his motion to vacate, set aside or correct his sentence, [Doc.103], is therefore DENIED.

The motion to amend, [Doc. 118], contains no claims which arguably would entitle petitioner to any relief under 28 U.S.C. § 2255, and it also is DENIED

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted. A certificate should issue if petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The Sixth Circuit Court of Appeals disapproves of the issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F. 3d 466 (6th Cir. 2001). The District Court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id*. at 467. Each issue must be considered under the standard set forth by the Supreme Court in *Slack v. McDaniel,* 529 U.S. 473, 120 S. Ct. 1595 (2000). *Id*.

Under *Slack,* to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." After reviewing each of Petitioner's claims, the Court finds that reasonable jurists

could not conclude that petitioner's claims are adequate to deserve further review. Because petitioner has failed to make a substantial showing of the denial of a constitutional right, a certificate of appealability will not issue.

A separate judgment in accordance with this Memorandum and Order will be filed.

SO ORDERED:

_____
s/J. RONNIE GREER
UNITED STATES DISTRICT JUDGE